**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAURO MIGUEL DE LA ROSA GALLEGOS,<br>Petitioner,<br>v.<br>ACTING OR CURRENT WARDEN, et al.,<br>Respondents. | Case No. 5:26-cv-02376-SP<br><br>**MEMORANDUM OPINION AND ORDER GRANTING PETITION** |

**I.**

**INTRODUCTION**

On May 4, 2026, petitioner Mauro Miguel De La Rosa Gallegos, a federal immigration detainee proceeding pro se, filed a Petition for a Writ of Habeas Corpus ("Petition"). Docket no. 1. Petitioner is being held at the United States Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California ("Adelanto"). He argues that his detention violates his procedural and substantive due process rights under the Fifth Amendment, the Immigration and Nationality Act ("INA") and its implementing regulations, and the Administrative Procedure Act

("APA"). Petitioner further contends that his arrest violated his Fourth Amendment rights. Petitioner seeks immediate release from immigration custody or, alternatively, a bond hearing, as well as declaratory and other injunctive relief.

On May 13, 2026, respondents filed an Answer, contending that: (1) petitioner's detention is lawful; (2) petitioner failed to exhaust administrative remedies; (3) *Zadvydas* is inapposite; (4) petitioner's poor detention conditions do not provide basis for habeas relief; and (5) that petitioner's alleged unlawful arrest does not provided a basis for release. Docket no. 8. Petitioner filed a Traverse, or Reply, on May 29, 2026, and then two supplemental replies in support of the Petition on July 15, 2026, and September 1, 2026, respectively. Docket nos. 13, 17, 18. The Petition, the Answer, the Reply, and the Second Supplemental Reply are each supported by exhibits.

For the reasons discussed below, petitioner's procedural due process claim merits habeas relief. The court therefore grants the Petition and issues a writ of habeas corpus requiring petitioner's immediate release from immigration custody along with other relief.

## II.

## BACKGROUND

Petitioner is a native and citizen of Mexico. Petition at 3, Ex. 2 at 3. In 2002, at age three, petitioner entered the United States without admission, parole, or inspection. *Id.* Petitioner has since resided in the United States. Petition at 3-4.

A Deferred Action for Childhood Arrivals ("DACA") program application was filed for petitioner on August 8, 2013. Petition at 3, Ex. 2 at 3. Petitioner was granted DACA status on July 14, 2014, and that status was renewed at least once in 2016. *Id.* Petitioner has worked since 2014 and supported his family. Petition at 3-4.

Petitioner married his United States citizen wife in 2017, and they have two young children. Petition at 3. On September 25, 2017, petitioner's wife filed an I-130 Petition for Alien Relative on petitioner's behalf, with the goal for petitioner to

receive Legal Permanent Residence status in three years. Petition at 3, Ex. 2 at 3. The I-130 process was delayed by the Covid pandemic, and petitioner ultimately learned in September 2025 that his I-130 application was terminated on September 16, 2024. *Id.*

Petitioner has a criminal history. Petition at 4-5, Ex. 2 at 3. In May 2024, Petitioner was convicted of misdemeanor driving under the influence of alcohol, in violation of California Vehicle Code § 21352(a), receiving a three-year probationary sentence. *Id.* Petitioner also has a pending domestic violence charge under California Penal Code § 273.5(a).[1] *Id.*

On August 25, 2025, ICE officers arrested petitioner pursuant to an administrative warrant.[2] Petition, Ex. 1 at 5, Ex. 2 at 2, Ex. 3. To date, petitioner's removal proceedings remain ongoing, and he has a hearing scheduled for November 10, 2026. *See* https://acis.eoir.justice.gov/en/caseInformation.

Petitioner did not receive an individualized custody determination or other process upon his detention by ICE. *See* Petition at 7-8. On December 17, 2025, petitioner had a Master Calendar hearing in immigration court at which he requested a bond hearing. Petition at 7. Petitioner alleges that the immigration judge denied that request, reasoning that he "did not have [j]urisdiction to give [p]etitioner a bond

---

[1] Respondents mischaracterize Petitioner's criminal history, asserting that he "has been convicted of DUI and domestic violence." Answer at 2 (citing docket no. 8-5). But the Form I-213 that respondents cite for that proposition expressly notes that the domestic violence charge remains "currently pending." Docket no. 8-5, at 3. Respondents identify no document in the record suggesting that status of that charge has changed.

[2] Petitioner alleges the administrative warrant "did not exist at the time of the arrest" and in fact issued "four[] [to] six hours after" the arrest. Petition at 11. To support this proposition, he offers the Notice to Appear and administrative warrant ICE issued on August 25, 2025, highlighting the date assigned to both as evidence proving his assertion. *See id.*, Ex. 1, at 1-2, 4-5. Neither establishes the temporal sequence petitioner's warrant argument presupposes.

hearing due to the manner he came into the country."[3] *Id.* The immigration judge also allegedly added that "due to the pending criminal case [against petitioner] and the probation violation[,] he would deny [petitioner] bond at such hearing" in any event. *Id.*

On March 2, 2026, as petitioner approached six months in immigration custody, immigration officials transported petitioner to immigration court for a bond hearing pursuant to *Rodriguez v. Holder*, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), *aff'd in part & rev'd in part sub nom. Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018). *Id.* The immigration judge noted that petitioner requested a custody redetermination under 8 C.F.R. § 1236 but "[w]ithdrew [the] bond request." *Id.*, Ex. 4 at 1.

## III.

## DISCUSSION

Petitioner seeks habeas relief on five grounds, namely that: (1) his detention violates his procedural and substantive due process rights under the Fifth Amendment; (2) his detention violated the INA, its implementing regulations, and the APA; (3) his detention has become unconstitutionally prolonged; (4) the conditions of his confinement are poor; and (5) his initial arrest without a judicial warrant violated the Fourth Amendment. *See* Petition at 10-24, 28-31.

### A. The Court Has Jurisdiction Over the Claims in the Petition

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates that he is "in custody in violation of the Constitution or laws or treaties

---

[3] Petitioner does not attach a transcript of the hearing to the Petition. In ordinary cases, petitioner's allegations might not be enough to plausibly attribute to the immigration judge this express refusal to conduct a bond hearing. But respondents neither dispute nor respond to petitioner's account and arguments regarding the December 2025 hearing. *See generally* Answer. Respondents' failure to do so "is in effect a concession" to petitioner's allegations. *Campos Navarro v. Mullin*, 2026 WL 1848126, at *4 (C.D. Cal. June 23, 2026).

of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, petitioner properly invokes the court's habeas jurisdiction because he is an immigration detainee challenging the legality of his detention under the Fourth and Fifth Amendments, the INA and its implementing regulations, and the APA.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g). Although § 1252(g) strips the court of jurisdiction to entertain any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings*, 583 U.S. at 294 (citation omitted). The applicability of § 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is . . . not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process." (citations omitted)). Here, because petitioner challenges the legality of his detention rather than any of the three actions listed above, neither 8 U.S.C. § 1252(a)(5), (b)(9), nor (g) strips the court of habeas jurisdiction.

**B. <u>Administrative Exhaustion Is a Prudential Requirement</u>**

Respondents contend that the Petition should be denied because petitioner did not exhaust his administrative remedies after his *Rodriguez* hearing. Answer at 3-4.

Petitioner anticipates this argument and contends that any failure to exhaust his administrative remedies should be excused as futile. *See* Petition at 25-27.

The Immigration and Nationality Act contains an administrative exhaustion requirement. *Puga v. Chertoff*, 488 F.3d 812, 814-15 (9th Cir. 2007) (citing 8 U.S.C. § 1252(d)(1)). But "[t]he exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (citation omitted); *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011) ("On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement."). A court "may waive" the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). The petitioner bears the burden of demonstrating grounds for excusing prudential exhaustion. *See Leonardo v. Crawford*, 646 F.3d 1157, 1160-61 (9th Cir. 2011).

Petitioner meets that burden here. He alleges that he requested a bond hearing at his December 2025 Master Calendar hearing, in response to which the immigration judge stated that (a) he lacked jurisdiction to grant petitioner a bond hearing "due to the manner [in which] he came into the country," and (b) even if he had jurisdiction, he would deny bond "due to the pending criminal case [against petitioner] and the probation violation." Pet. at 7.

This denial invoked the categorical, mandatory-detention theory of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), *abrogated as contrary to law by Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1106 (C.D. Cal. 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). Respondents do not dispute that any further administrative remedies would be futile. *See Campos Navarro*, 2026 WL 1848126, at *4. In any case, requiring petitioner to exhaust his administrative remedies by pursuing a bond appeal to the Board of

Immigration Appeals would likely prove futile where, as here, the immigration judge denied bond on jurisdictional grounds. *E.g.*, *Lacanzo v. Warden/Facility Adm'r Cal. City Immigr. Processing Ctr.*, 2026 WL 2428058, at *4 n.4 (E.D. Cal. Aug. 19, 2026); *Githinji v. Rokosky*, 2026 WL 2534640, at *3-4 (D. Ariz. Aug. 10, 2026) (collecting cases).

Respondents emphasize that petitioner withdrew his bond request at his *Rodriguez* hearing and argue that he "may request another *Rodriguez* bond hearing at any time." Answer at 3. As discussed further below, this misses the point. A "post-deprivation bond hearing ordinarily 'is not an adequate substitute' for a pre-deprivation hearing." *Herman v. Dep't of Homeland Sec.*, 2026 WL 1723960, at *5 (C.D. Cal. June 12, 2026) (collecting cases). "[T]he purpose of habeas remedies," after all, "is to put the [petitioner] back in the position he would have been in if the [constitutional] violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). Pre-deprivation hearings are meant to prevent the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities" as alleged here. The government is not free to inflict unconstitutional harm, only to offer an unconstitutional remedy. *See Lopez-Valerio v. Johnson*, 2026 WL 1770692, at *4 (C.D. Cal. May 1, 2026) (quoting *Hernandez*, 872 F.3d at 995). Petitioner was entitled to a pre-deprivation hearing – another *Rodriguez* bond hearing is insufficient. Petition at 31-32; *see Gonzalez v. Santacruz Jr.*, 2026 WL 2675864, at *3 (C.D. Cal. Sept. 11, 2026) (waiving exhaustion requirement and explaining that "a post-deprivation bond hearing before an Immigration Judge . . . would be incapable of addressing the injury" of the lack of a pre-deprivation hearing).

As such, the court exercises its discretion to waive the administrative exhaustion requirement.

**C. Petitioner's Detention Without Adequate Procedural Protections Violated Due Process**

The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of liberty without due process of law. U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Federal courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted); *see also Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (applying the two-step inquiry).

**1. Petitioner Has a Protected Liberty Interest**

The first step asks whether respondents have interfered with petitioner's protected liberty interest. Petitioner argues he has a liberty interest in his release from immigration custody. Petition at 24.

"Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). Courts have repeatedly recognized that conditional release from custody may give rise to a protected liberty interest. *See Young v. Harper*, 520 U.S. 143, 147-49 (1997); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Some courts have found that the government's decision not to detain a non-citizen during immigration processes, such as while an asylum application is pending, similarly gives rise to a protected liberty interest. *See Kalkan v. Chestnut*, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026) (petitioner had liberty interest in being free from detention because immigration officials were aware of his presence, initially approved of that presence, and did not

promptly detain him when that status expired); *Kharitonova v. Albarran*, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (petitioner had the same liberty interest as an individual initially detained and released because the government made a decision not to detain her in the first place); *but see Jemna v. Warden of Otay Mesa Det. Ctr.*, 2026 WL 788172, at *5 (S.D. Cal. Mar. 20, 2026) ("Although Petitioner has a private interest in remaining free, he does not possess the same liberty interest as noncitizens who were previously detained and released pursuant to conditional release or parole.").

Here, petitioner has a liberty interest in his release. Petitioner arrived in the United States as a young child in 2002 and has resided here ever since. Pet. at 3, Ex. 2 at 3. Petitioner is married to a U.S. citizen, has U.S. citizen children, and worked to support them. Petition at 3-4. Petitioner obtained DACA status, and his wife later filed a petition to start the process for him to obtain legal permanent status. Petition at 3, Ex. 2 at 3. Petitioner established a life for himself in the United States while taking steps to obtain legal status, and therefore acquired a protected liberty interest in his release from immigration custody. *See, e.g., Villa Cambron v. Johnson*, 2026 WL 2584950, at *5 (C.D. Cal. Sep. 1, 2026) (noting courts have """overwhelmingly found""" noncitizens with DACA status have protected liberty interest, and "[e]ven when a noncitizen's DACA status has expired, their liberty interest does not necessarily expire as well") (citations omitted); *G.B. v. Warden, Gold State Annex Det. Facility*, 2026 WL 2568533, at *4 (E.D. Cal. Aug. 31, 2026) ("liberty interest was created at the time that the government granted petitioner DACA status").

**2. <u>Petitioner Was Entitled to a Pre-Deprivation Hearing Prior to Detention Under the Due Process Clause</u>**

"To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge* . . . ." *Pinchi*, 792 F. Supp. 3d at 1033 (citation omitted); *see also Hernandez v.*

*Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying the *Mathews* factors in the immigration context). The three factors considered by the court under *Mathews* are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted).

The first factor examines petitioner's private interest, here his interest in being free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted); *Hernandez*, 872 F.3d at 993 (holding it "is beyond dispute" that "freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause'"). Petitioner has lived in the United States since his arrival, is married with children, and established a normal life. Pet. at 3-4. As such, his personal interest in remaining out of immigration custody is extremely high.

The second factor examines the risk of erroneous deprivation of petitioner's liberty interest, as well as the value of additional procedural safeguards. "The risk of an erroneous deprivation of liberty is high where, as here, petitioner has not received any bond or custody redetermination hearing." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) (citation modified). The Supreme Court has made clear that immigration proceedings are civil in nature and must be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Therefore, immigration detention must be justified by one of two regulatory goals – preventing risk of flight or danger to the community. *Id.* Respondents, in effect, already made such a determination with respect to petitioner when they decided not to detain him in the first place, but

instead granted him DACA status. Since that time petitioner has incurred a DUI conviction and has a pending domestic violence charge. But how such criminal history should be weighed is a matter that could have been assessed at a hearing, but was not. Thus, "[g]iven the absence of any procedural safeguards to determine if [petitioner's] detention was justified, the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *R.D.T.M.*, 2025 WL 2686866, at *6 (citation and internal quotation marks omitted); *Mourey v. Bowen*, 2026 WL 467567, at *5 (C.D. Cal. Jan. 31, 2026) (same).

Finally, the third factor examines the government's interest, which here would be its interest in detaining petitioner absent additional process. *See Xianming H. v. Warden*, 2026 WL 1283415, at *4 (E.D. Cal. May 11, 2026) ("[T]he Government's interest is low."); *see also Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025) ("there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing"). The cost of providing a pre-deprivation hearing to petitioner is minimal and custody hearings are routinely conducted by Immigration Courts. *See Xianming H.*, 2026 WL 1283415, at *4; *Singh v. Bowen*, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citations omitted).

In sum, given petitioner's strong interest in being free from immigration detention, the high risk of erroneous deprivation of his liberty interest, the high value of additional procedural safeguards, and the lack of government interest in detaining petitioner without additional process, all three of the *Mathews* factors strongly favor petitioner. Therefore, the government's detention of petitioner without adequate process violated petitioner's right to procedural due process under the Fifth Amendment.

But the inquiry does not end here. Six months after he was detained petitioner was offered a *Rodriguez* bond hearing, but it did not go forward, with the immigration judge indicating petitioner withdrew his request and petitioner disputing that he really

had an opportunity for a hearing. *See* Petition at 7-8, Ex. 4 at 1. Regardless, respondents contend petitioner may simply request another *Rodriguez* hearing. Answer at 2. The question is whether this would satisfy due process.

As discussed above, "the purpose of habeas remedies is to put the [petitioner] back in the position he would have been in if the [constitutional] violation never occurred." *Lujan*, 734 F.3d at 935 (citation and quotation marks omitted). The Ninth Circuit has found that a petitioner is only entitled to relief if he can demonstrate prejudice from the due process violation; however, those cases did not concern pre-deprivation and post-deprivation hearings. *See Orellana v. Garland*, 2024 WL 2795192, at *2 (9th Cir. May 31, 2024) ("Generally, an individual may obtain relief for a due process violation only if she shows that the violation caused her prejudice, meaning the violation potentially affected the outcome of the immigration proceeding.") (cleaned up); *U.S. v. Landeros-Morales*, 840 F. App'x 911, 912 (9th Cir. 2020) (Assuming the immigration judge violated due process, "[petitioner] is not entitled to relief because he cannot demonstrate prejudice."). Indeed, the Supreme Court has found that "[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing." *Mathews*, 424 U.S. at 331.

Accordingly, many district courts in this Circuit "have ordered release even where a belated bond hearing has taken place," *Kumar v. Rios*, 2026 WL 1764923, at *7 (C.D. Cal. June 12, 2026) (listing cases), or taken the position "that any post-deprivation process cannot cure the constitutional violation when the non-citizen was entitled to pre-deprivation notice and hearing." *Andriasyan v. Warden*, 2026 WL 1601905, at *9 (C.D. Cal. June 1, 2026); *see, e.g.*, *Villegas Molina v. Mullin*, 2026 WL 1182194, at *3 (C.D. Cal. Apr. 23, 2026) (noting that the severe delay of post-deprivation bond hearings cannot undo the harms of immigration detention such as the loss of jobs and subpar medical care); *Mumaev v. Samaia*, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026) (a post-deprivation hearing cannot support a petitioner's

continued detention when the underlying arrest, revocation of parole, and redetention violated due process); *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871, 882 (C.D. Cal. 2026) ("Providing Petitioner with a post-detention hearing or other procedural remedy will not redress the constitutional violation Petitioner has suffered in being re-detained without a pre-deprivation hearing required by due process."); *see also Gonzalez v. Joyce*, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2015) ("The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment."). Even courts that have found a post-deprivation hearing may arguably satisfy due process have raised questions of prejudice and adequacy. *See, e.g., Herman v. DHS*, 2026 WL 1723960, at *5 (C.D. Cal. June 12, 2026) (finding petitioner "was likely prejudiced by being forced to litigate a bond hearing while he is detained . . . [as] detention makes it more difficult for noncitizens to access counsel, obtain evidence, and otherwise prepare for a bond hearing"): *Saballos Rosales v. Noem*, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (a deficient post-deprivation hearing is "no substitute" for the pre-detention process).

On the particular facts and circumstances of this case, the court agrees that the belated bond hearing would not remedy the due process violation. Because petitioner's detention was unlawful, the proper remedy is release from custody. *See Singh*, 2025 WL 3251437, at *9; *Yataco v. Warden, Adelanto Det. Facility*, 2025 WL 4065463, at *7 (C.D. Cal. Dec. 26, 2025); *see also Faizyan v. Casey*, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (collecting cases).

**3. <u>Petitioner Is Entitled to a Pre-Deprivation Bond Hearing Before Any Future Re-Detention</u>**

Typically, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127

(1990) (citation omitted). In the context of both parole and probation revocations, the nearest analogues to petitioner's situation, the Supreme Court has required pre-deprivation hearings to determine whether an individual's release may be revoked. *See Morrissey*, 408 U.S. at 480-86; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Given petitioner's substantial liberty interest and the high risk of erroneous deprivation of that interest absent such a pre-deprivation hearing, due process requires a pre-deprivation hearing. *See, e.g., Singh*, 2025 WL 3251437, at *8; *R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases). Indeed, in the immigration parole revocation context, courts have routinely found that individuals should be "afforded a hearing before a neutral decisionmaker prior to any re-arrest or re-detention to determine if the government has demonstrated by clear and convincing evidence that his detention is necessary to prevent danger to the community or flight." *Singh*, 2025 WL 3251437, at *8; *Yataco*, 2025 WL 4065463, at *7; *R.D.T.M.*, 2025 WL 2686866, at *8; *Pinchi*, 792 F. Supp. 3d at 1038; *Padilla v. Bowen*, 2025 WL 3251368, at *10 (C.D. Cal. Nov. 21, 2025).

**D. <u>Petitioner's Remaining Claims</u>**

Petitioner also argues that his detention violates his substantive due process rights under the Fifth Amendment, the INA and its implementing regulations, and the APA. He further argues that his initial arrest by ICE officers without a judicial warrant violated his Fourth Amendment right to be free from unreasonable seizure. Because the court has already concluded that petitioner is entitled to release on procedural due process grounds, it need not address petitioner's remaining claims. Petitioner may raise the claims again if he is subject to any future detention.

//

//

**IV.**

**ORDER**

IT IS THEREFORE ORDERED that: (1) Judgment will be entered granting the Petition; (2) respondents shall immediately release petitioner Mauro Miguel De La Rosa Gallegos (A# 204-933-385) from immigration custody on reasonable conditions that shall not include electronic monitoring absent a determination at a hearing by a neutral decisionmaker that such monitoring is warranted; (3) respondents shall return any confiscated property and documents to petitioner upon his release; (4) respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that petitioner presents a flight risk or a danger to the community; and (5) respondents shall file a status report no later than **October 13, 2026,** confirming that petitioner has been released from respondents' custody.

Dated: October 8, 2026

SHERI PYM
United States Magistrate Judge